# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. DEANGELO THOMPSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 11-00903    John Fowlkes, Judge**

**No. W2011-02597-CCA-R3-CD  -  Filed March 28, 2013**

Defendant, Deangelo Thompson, appeals from his conviction in the Shelby County Criminal Court for reckless aggravated assault as a lesser-included offense of aggravated assault. Defendant was sentenced by the trial court as a Range II multiple offender to five years incarceration.  In this direct appeal, Defendant asserts that the evidence at trial was insufficient to support his conviction; that the trial court erred by sentencing him to five years in confinement for his conviction; and that certain comments and questions by the trial court constitute plain error.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Ruchee J. Patel, Memphis, Tennessee, for the appellant, Deangelo Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts*

Deputy Eric Newton, of the Shelby County Sheriff's Office, was on duty as a courtroom deputy on November 10, 2010.  He was assigned to the "podium officer position," and Deputy Arthur Woody was assigned to escort inmates in and out of the courtroom. Deputy Newton testified that Defendant was in the courtroom on that day to request that the trial court recall a warrant for his arrest.  When the trial judge denied Defendant's request

and ordered that he be taken into custody, Defendant "became a little irate, loud and he began screaming obscenities in the courtroom." Deputy Newton testified that Defendant was "[c]ursing loudly" and "yelling." Deputy Newton asked Deputy Mark Thompson to assist Deputy Woody in escorting Defendant out of the courtroom. Deputy Newton testified that, "maybe a couple of minutes later," he received a call from Deputy Thompson that Deputy Woody had been injured. When Deputy Newton arrived at the jail tunnel, he saw Deputy Woody "lying on the floor in tears." Deputy Newton testified that Deputy Woody's kneecap appeared to be out of place, and he was in "severe pain." Defendant had already been escorted to the holding area.

Deputy Arthur Woody testified that when the trial judge denied Defendant's request to have the arrest warrant recalled and ordered him into custody, Defendant became "real agitated." While court was in recess, Deputy Woody led Defendant out of the courtroom and into the tunnel area between the courthouse and the jail. Deputy Woody testified that Defendant "had calmed down," and he was not handcuffed. As they exited the courtroom, Defendant ran. Deputy Woody ran after Defendant and "caught him downstairs because he turned and went the wrong way[.]" Deputy Woody directed Defendant to put his hands against the wall, and he handcuffed him. Deputy Woody testified Defendant "became very angry with me and he started struggling." Defendant was "ranting and raving," and he told Deputy Woody, "I'm going to kill you when I see you on the street." Deputy Thompson arrived to assist Deputy Woody, and they took Defendant by the arms and led him through the hallway. Deputy Woody testified that Defendant then "rammed [him] against the wall and [they] both fell." Defendant fell on top of Deputy Woody, and Deputy Woody's left knee hit the concrete floor. When he stood up, his "leg gave away, and [he] went back down to the floor." He tried again but was still unable to stand. Deputy Woody thought his leg was broken. He was taken to the hospital. He underwent surgery for a torn tendon. He returned to work on January 29, 2011, but he was limited to "light duty." He was able to return to "regular duty" on June 2, 2011. He testified that he still had some pain in his knee at the time of trial.

Officer Anthony Jones worked in the jail division and was assigned to the court tunnel. He testified that he heard "loud noises" coming from the hallway. He then saw Deputy Woody and Defendant "having words and they started up toward the hall" toward him. Defendant was handcuffed, and "he was a little irate and was turning trying to jerk away from Deputy Woody." Jones saw Defendant "turn[ ] and spin[ ] Officer Woody up against the wall and they fell." He and Deputy Thompson lifted Defendant off Deputy Woody and escorted Defendant to the jail. He testified that Deputy Woody "was in anguish. He was in pain."

Deputy Mark Thompson was in the courtroom when Deputy Woody escorted Defendant out of the courtroom door "leading to the stairwell going to the tunnel." He testified, "[T]he next thing I heard was Officer Woody saying, 'Quit running. Stop.'" He left the courtroom to assist Deputy Woody. When he got to them, he saw Deputy Woody putting handcuffs on Defendant. Defendant was "agitated." He testified that as they walked toward the jail, Defendant "threw himself into Deputy Woody which caused both of them to go into the wall" and "they both ended up going down and hitting the ground."

The defense called Judge Louis Montesi to testify. Judge Montesi testified that he recalled officers bringing to his attention that there was a warrant for Defendant's arrest. He testified that when he ordered that Defendant be taken into custody, Defendant "became very upset and very angry and very loud." Defendant yelled profanity in the courtroom.

*Sentencing hearing*

At the sentencing hearing, a presentence report was admitted into evidence. Defendant's father testified that he was the program director for Mid-South Health Med. He testified that Defendant could live with him if Defendant was released on probation and that he could provide Defendant opportunities for community service through the facility where he (Defendant's father) worked. He described Defendant as "a caring person."

At the conclusion of the sentencing hearing, the trial court classified Defendant as a Range II multiple offender. The court considered the facts at trial, the sentencing hearing and the presentence report, which indicated that Defendant's "criminal history [wa]s extensive." The court declined to apply two enhancement factors, Tenn. Code Ann. § 40-35-114(6) and (19), and did not apply any mitigation factors.

*Sufficiency of the Evidence*

Defendant contends that the evidence at trial was insufficient to support his conviction. Specifically, Defendant asserts that there was insufficient evidence that the victim suffered serious bodily injury.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or

a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas*, 286 S.W.2d at 859. This court must afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *Id*.

A conviction for reckless aggravated assault requires proof beyond a reasonable doubt that the defendant recklessly caused serious bodily injury to another. Tenn. Code Ann. § 39-13-102(a)(2) (2010 Repl.). "Serious bodily injury" is defined as bodily injury that involves:

> (A) A substantial risk of death;
> (B) Protracted unconsciousness;
> (C) Extreme physical pain;
> (D) Protracted or obvious disfigurement; or
> (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]

Tenn. Code Ann. § 39-11-106(a)(34) (2006). "Bodily injury," is defined to "include[ ] a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." *Id*. at § 39-11-106(a)(2). Concerning these definitions, this court has stated:

> While the phrase "serious bodily injury" . . . is not susceptible to precise legal definition, it must describe an injury of a greater and more serious character than that involved in a simple assault. The distinction between "bodily injury" and "serious bodily injury" is generally a question of fact for the jury and not one of law.

*State v. Barnes*, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997).

-4-

Defendant relies on *State v. Sims*, in which this court held that the evidence of the victim's injuries were insufficient as a matter of law to support a finding of serious bodily injury based on extreme physical pain or protracted or obvious disfigurement. 909 S.W.2d 46, 49-50 (Tenn. Crim. App. 1995), *abrogated on other grounds by State v. Charles Justin Osborne*, No. 01C01-9806-CC-00246, 1999 WL 298220 (Tenn. Crim. App., at Nashville, May 12, 1999). In *Sims*, the victim was struck in the face with a pistol one time. *Id*. at 48. As a result, she had a broken and swollen nose, a bruised cheekbone, two black eyes, and a cut across the bridge of her nose." *Id*. She testified that she experienced extreme physical pain in her face and nose. The victim was treated during a hospital visit that lasted approximately two hours and prescribed pain medication. She testified that she consulted a plastic surgeon but did not undergo surgery for her injuries. She missed five weeks of work due to her injuries.

Interpreting the statutory meaning of "extreme physical pain," this court reasoned, "[w]e do not believe that the pain commonly associated with a broken nose is extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty." *Id*. at 49. The court acknowledged "the difficulty of quantifying or measuring pain" and concluded that the evidence was insufficient to support the element of serious bodily injury based on extreme physical pain or protracted or obvious disfigurement. *Id*. at 49-50.

Since our decision in *Sims*, this court has applied its holding to various other injuries sustained by victims in physical altercations and concluded that the subjective nature of pain is a question of fact to be determined by the trier of fact. *State v. Eric A. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App., Feb. 23, 2006), *no perm. app. filed*; *see State v. Ryan Love*, No. E2011-00518-CCA-R3-CD, 2011 WL 6916457, at *4 (Tenn. Crim. App., Dec. 28, 2011), *no perm. app. filed* (victim suffered "serious bodily injury" where victim had severe injuries to his face, including cuts and bruises throughout, a right eye which was swollen shut, and a swollen left eye); *see State v. Holly Lack Earls*, No. 01C01-9612-CC-00506, 1998 WL 15896, at *7 (Tenn. Crim. App. Jan. 16, 1998) (diabetic victim sustained serious bodily injuries including a broken finger, a broken arm requiring a metal plate, injuries to his shoulder, legs, and ankles, loss of "a lot of blood," was in pain "for a long time," and was hospitalized "for a couple of days"); *see also State v. Darren Matthew Lee*, No. M1999-01625-CCA-R3-CD, 2000 WL 804674, at *4 (Tenn. Crim. App. June 23, 2000), *perm. app. denied* (Tenn. Dec. 11, 2000) (victim kicked "repeatedly" in the face, resulting in two black eyes, severe facial swelling and a torn lip, was unable to work for a week, suffered headaches for three to four weeks, and suffered "extreme physical pain"); *see also State v. James Ruben Conyers*, No. M2002-01007-CCA-R3-CD, 2003 WL 22068098, at *9-10 (Tenn. Crim. App. Sept. 5, 2003), *perm. app. denied* (Tenn. Jan. 26,

2004) (victim suffered "serious bodily injury" when she was hospitalized for seven days with multiple head trauma, including deep scalp lacerations, bruising and swelling of the neck, and lost "a significant amount of blood"); *State v. Chester Dale Gibson*, No. M2005-01422-CCA-R3-CD, 2006 WL 770460, at *11 (Tenn. Crim. App. Mar. 24, 2006), *perm. app. denied* (Tenn. Aug. 28, 2006) (victim suffered repeated blows to the face causing fractures to the nasal and eye area, two black eyes, a bruise to the right temple, a bruised lip and swollen and bloody nose, and was in "extreme physical pain").

Defendant also relies upon our supreme court's decision in *State v. Farmer*, 380 S.W.3d 96 (Tenn. 2012), in which the court clarified the definition of serious bodily injury and held that a gunshot wound does not necessarily cause bodily injury that involves "a substantial risk of death." In that case, the victim was shot in the leg. The bullet passed through the victim's leg. The wound required minimal medical treatment and did not cause the victim to suffer a loss of consciousness, extreme pain, disfigurement, or impairment. The court noted that hospital records classified the victim's pain as "mild" to "moderate" and that the victim did not testify as to the degree of pain he experienced. *Id*. at 101. The court concluded that "[a] jury could not reasonably infer from [the victim]'s testimony, the hospital records, and the nature of his injury that [the victim]'s wound involved extreme pain." *Id*. at 101-102. The court vacated the defendant's conviction for especially aggravated robbery, finding that the State failed to present sufficient proof of a serious bodily injury, and modified Defendant's conviction to aggravated robbery. *Id*. at 103.

In the present case, Deputy Woody testified that his "patella tendon was shredded from here to there." In order to repair his knee, he underwent surgery, in which the tendon was stitched back to the bone, and he subsequently received physical therapy. He was unable to return to work for more than two months after his injury and then was allowed only to return to light duty until approximately seven months after his injury. Deputy Woody was unable to stand immediately after his injury, and he described the pain in his knee as "serious," "extreme," and "unbearable." He was given pain medication when he arrived at the hospital. Others testified that Deputy Woody "was in tears" and described his condition as "severe pain" and "anguish." Deputy Newton testified that Defendant's "kneecap wasn't where it was supposed to be." We distinguish Deputy Woody's injuries from those described in *Sims* and *Farmer*. The proof, missing in those cases, was present in this case to meet the definition for serious bodily injury. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant asserts that his sentence was improper because the trial court misapplied certain enhancement factors and failed to apply certain mitigating factors. Defendant also asserts that the trial court erred by denying his request for alternative sentencing.

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Recently, our supreme court held that the same abuse of discretion standard should be applied to the manner of service of a sentence, which includes the grant or denial of probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). When determining if confinement is appropriate, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2010 Repl.). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. §§ 40-35-103(5) (2010 Repl.), -210(b)(5) (2010 Repl.); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4). The burden of demonstrating the suitability for full probation rests with the defendant. Tenn. Code Ann. § 40-35-303(b) (2010 Repl.).

Unless a trial court "wholly depart[s] from the 1989 Act, as amended in 2005[,]" misapplication of enhancement or mitigating factors does not invalidate a sentence. Thus, a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing. *Bise*, 380 S.W.3d at 706; *Carter*, 254 S.W.3d at 345-46 ("Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors.").

Defendant contends that the trial court should not have found that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary

to establish the appropriate range, Tenn. Code Ann. § 40-35-114(1), and that the trial court should have mitigated his sentence by finding that his physical condition of being handcuffed significantly reduced his culpability for the offense and that he acted under duress. Defendant also asserts that the trial court erred by denying his request for an alternative sentence.

Defendant was classified by the trial court as a Range II offender, and he does not challenge that classification on appeal. Defendant was convicted of reckless aggravated assault, a Class D felony. Tenn. Code Ann. § 39-13-102(a)(2). Therefore, the appropriate sentencing range was not less than four nor more than eight years. Tenn. Code Ann. § 40-35-112(b)(4). The trial court imposed a sentence of five years, one year above the minimum sentence within the range. The trial court relied upon Defendant's previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. *See* Tenn. Code Ann. § 40-35-114(1). Defendant contends that the trial court's reliance on this factor was misplaced because his criminal record consists only of misdemeanors, other than the two felonies used to enhance his range. However, a trial court may apply this factor based solely on a prior history of misdemeanor convictions. *see State v. Ramsey*, 903 S.W.2d 709, 714 (Tenn. Crim. App. 1995); *see also State v. Seals*, No. E2008-02178-CCA-R3-CD, 2010 WL 3384978, at *6 (Tenn. Crim. App. Aug. 27, 2010). The presentence report in this case shows that Defendant's prior criminal history includes convictions for drug offenses, driving while his license was suspended or revoked, theft of property, failure to appear, and attempted burglary of a building. The trial court's reliance on this factor was proper. Moreover, as noted above, under our supreme court's ruling in *Bise*, even a trial court's "misapplication of enhancement or mitigating factors does not invalidate a sentence." *Bise*, 380 S.W.3d at 706.

In denying Defendant's request for alternative sentencing, the trial court again noted Defendant's extensive criminal history. The court also noted that the presentence report indicated that Defendant had been on probation for another offense, and his probation was revoked. Also based on Defendant's lengthy criminal record, the trial court determined that measures less restrictive than incarceration had been applied unsuccessfully. Finally, the trial court found that allowing probation would depreciate the seriousness of the offense, noting that Defendant's actions began in the courtroom during court proceedings. Despite Defendant's argument that the trial court abused its discretion in sentencing him to confinement, our appellate review reveals that the record in this case reflects that the trial court considered the sentencing principles and all relevant facts and circumstances in determining that imprisonment was appropriate.

We conclude that Defendant's sentence of five years for his conviction for reckless aggravated assault is within the applicable range and consistent with the purposes and

principles of sentencing. Furthermore, the record shows that the trial court stated its reasons for imposing the sentence, followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due considerations to the relevant sentencing principles. Based on our review, we conclude that the trial court did not abuse its discretion in sentencing Defendant to serve five years in confinement. Defendant is not entitled to relief on this issue.

*Plain error*

Defendant asserts that he is entitled to relief under a "plain error" analysis of comments made by the trial court to the jury and the trial court's questioning of the victim. The State responds that Defendant has waived this issue by failing to object at trial, and even if the issue is not waived, Defendant has failed to establish the five prerequisites for plain error.

Defendant did not object at trial to the comments or questions complained about on appeal. Relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); *see Sims*, 45 S.W.3d 1, 16 (Tenn. 2001). Defendant asserts, however, that the comments and questions by the trial court constitute plain error. The doctrine of plain error provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for us to find plain error,

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice.

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. *Id*. at 283.

Defendant asserts that the trial court's pretrial instructions "prejudicially affect[ed] [Defendant] by offering a factually similar circumstance" to the jury. During jury selection, the trial court made the following comments to the jury:

In other words you're really on the jury throughout the trial but at the end of the case and all twelve jurors are ready to go back and survived everything to begin deliberations, at that time you would be excused and you would not be able to participate in the actual deliberations but if something happens to one of the jurors, God forbid something happen, if something unexpected come[s] up, one of them cannot continue, then we have a person who has sat here and listened to everything and can step in and take their place.

The example I use is about a month ago, maybe six weeks ago w[h]ere in a trial just like this one and I was excusing everyone for lunch. I mean the jurors and No. 6 seat back there and they were filing out, you notice there's a couple of steps over there, got the first one but missed that second step. I was sitting back here and he went down like a tree. It sounded real loud and all but he go[t] up and said he was fine.

When he came back from lunch his arm was hurting where he landed. He wanted to go to the doctor to the hospital and get it checked out. I was able to do that. The alternate stepped in and took his place. Later I found out it wasn't broken or anything like that. It was just really sore and he was fine but that's an excellent example of the purpose of an alternate juror. Something unexpected happened have a person who can step in and take that person's place. Ok. Do you understand the purpose of an alternate juror?

Defendant contends that the trial court's comments prejudicially affected the outcome of the case because the trial judge "anecdotally cautioned [the] jury about the risk of injury in the courtroom." We agree with the State that, taken in context, the above comments by the court were altogether unrelated to the facts of the present case, and therefore did not constitute "plain error."

Defendant also asserts that in its examination of the victim and in reading bench notes to the jury, the trial court "demonstrated subjective feelings" regarding the victim's pain and improperly commented on the weight of the evidence. The Tennessee Constitution prohibits judges from making any comment "with respect to matters of fact." Tenn. Const. art. VI, § 9; *State v. Suttles*, 767 S.W.2d 403, 406 (Tenn. 1989). The aim of this rule is to avoid giving "the jury any impression as to [the judge's] feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *Suttles*, 767 S.W.2d at 407; *see State v. Brown*, 823 S.W.2d 576 (Tenn. Crim. App. 1991). "It is natural that jurors should be anxious to know the mind of the Court, and follow it; therefore, a Court

cannot be too cautious in its inquiries." *McDonald v. State*, 89 Tenn. 161, 164, 14 S.W. 487, 488 (Tenn. 1890). That said, our Rules of Evidence, however, specifically permit the interrogation of witnesses by the trial judge:

> (b) Interrogation by Court. The Court may interrogate witnesses.
> (c) Objections. Objections . . . to interrogation by [the court] may be made at the time or at the next available opportunity when the jury is not present.

Tenn. R. Evid. 614(b), (c). So long as the inquiry is impartial, trial courts may ask questions to either clarify a point or to supply any omission. *See Collins v. State*, 220 Tenn. 275, 416 S.W.2d 766 (Tenn. 1967); *Parker v. State*, 132 Tenn. 327, 178 S.W. 438 (Tenn. 1915).

In the present case, the trial court questioned the victim Deputy Woody after the State's direct examination and Defendant's cross-examination:

Q      I just have a couple of follow-up questions just for clarifications.

A      Yes, sir.

Q      First of all, Officer Woody – Deputy Woody, just for the record, the jurors can see you but for the record how tall are you?

A      Five-four-and-a-half.

Q      How much do you weigh?

A      Approximately 145.

Q      145. Okay. Now, when you showed the jurors how the defendant pushed into you and you went down, you were standing in front of my bench here. Could you describe that in a little more detail please? For an example was it a shoulder that went into your chest or his elbow or what, just describe what happened?

A      It was a shoulder because we standing [sic] by pretty what [sic] the same height. So when he rammed me into the wall with his shoulder, I went down and he went down with me.

Q      He went down with you so he landed immediately on you?

-11-

A       Yes, sir.

Q       Now, I need to gauge the level of your pain.  I took notes.  First it was no numb [sic].  Then the pain started you said and it got worse and it got serious.  I need for you to describe – when you say it was serious, describe what you mean about the pain that you felt in your knee?

A       Well, it like I said was numb.  Apparently it deadened – the nerves was dead, and then when the nerves starting coming back to life, the pain starting coming back and it started increasing until it was hurting pretty bad.  Then I asked – I told attendant – I said you got anything to give me.  He said, well, I can get you some – something for the pain, and he went and got some pain medicine, and I took it while I was still waiting to be treated.

Q       When you say the pain was serious, what do you mean by "[s]erious"?

A       It was kind of unbearable.

Q       Unbearable?

A       Yes, sir.

Q       So it was extreme?

A       Yes, sir.

Q       So you were hurting pretty bad?

A       Yes, sir.

Defendant argues that the trial court's question whether the victim's pain was "extreme" went beyond clarification and invaded the province of the jury.  Defendant asserts that "the record is factually void of all objective elements of the definition of serious bodily injury, [therefore] the admission of this prejudicially developed testimony of the single subjective element [of extreme physical pain] is an error of sufficient magnitude that it probably changed the outcome of the trial."  As we have already discussed in this opinion, there was sufficient evidence in the record, even without the victim's answers to the trial

-12-

court's questions, of extreme physical pain. Defendant has not established that consideration of the alleged error is necessary to do substantial justice. We conclude that the prerequisites for a finding of plain error are not satisfied in this case.

## CONCLUSION

After a careful review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE